**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KHALID A. MAHAMMEND,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER T. FAIR,<br>OFFICER D. WILLS,<br>OFFICER E. CUNNINGHAM,<br>HEARING OFFICER SHANNON SINGLETON, and<br>JAMES J. WILSON,<br><br>Defendants. | Civil Action No.: 25-cv-516-PX |

# MEMORANDUM OPINION

Plaintiff Khalid A. Mahammend, a Maryland inmate, filed suit under 42 U.S.C. § 1983 against Timothy Fair, Dustin Wills, Joseph Staley, Edward Cunningham, Shannon Singleton, and "Warden's designee" James Wilson,[1] alleging an Eighth Amendment excessive use of force claim arising from corrections officers' forcible extraction of Mahammend from his prison cell. ECF No. 1. Mahammend also challenges the adequacy of the medical treatment he received after the incident and the denial of a fair hearing on related rule infractions. *Id*. Defendants move to dismiss the Complaint,[2] or alternatively, for summary judgment to be granted in their favor.[3] ECF No. 52.

[1] The Clerk shall amend the docket to reflect the full and correct names of Defendants.

[2] The Court construes the Complaint to include the original filing at ECF No. 1, along with supplements at ECF Nos. 11, 15, 17, 18, 20, 25, 26, and 34.

[3] The Court also grants Defendants' motions to file excess pages, to seal Mahammend's medical records and attached surveillance footage, and to strike Mahammend's request to amend his prayer for relief, ECF Nos. 51, 54 and 67.

The Court needs no hearing. *See* Md. Loc. R. 105.6. For the reasons stated below, the motion, construed as one to dismiss, will be denied without prejudice, and counsel will be appointed to represent Mahammend.

## I. Background

The parties submit evidence beyond the four corners of the Complaint, which the Court construes most favorably to Mahammend as the non-movant. Mahammend first maintains that on December 17, 2024, Defendant Officers essentially made up an "emergency" as grounds to enter his cell, claiming Mahammend was intoxicated and standing in his cell "aggressively." ECF No. 52-2, at 3 and 5; ECF No. 52- 3, at 26, 27, and 28; ECF No. 25 at 1. Once they arrived at the cell, Officer Wills grabbed Mahammend by his neck and left arm and forced him to the ground. ECF No. 1 at 5. At that point, Mahammend was handcuffed and subdued; nonetheless, Wills put Mahammend in a headlock, put his knee into Mahammend's back, and choked him until he passed out. ECF No. 1 at 5; ECF No. 25 at 6; ECF No. 26 at 1.

Officers Cunningham and Wills next transported Mahammend to the medical unit in what Mahammend contends was a "gas powered emergency response 4x4 quad." ECF No. 1 at 5; ECF No. 25 at 1. Shackled at his wrists and ankles, Mahammend was carried into the medical unit, placed face down on a stretcher, and further harmed when the handcuffs were put on so tightly that they cut his wrists. ECF No. 25 at 1; ECF No. 26 at 2; ECF No. 34 at 5. He remained unconscious until he was in the medical unit. ECF No. 61.

Shortly after, the prison's Internal Investigation Division ("IID") opened a use-of-force investigation on the incident, and Mahammend recounted to the investigators the above-described events. ECF No. 52-3 at 4. Contemporaneous photographs show injuries to Mahammend's wrists which corroborate his account. *Id*. at 7-10.

Defendants tell a very different tale. They claim that Officer Wills, Cunningham and a third officer responded to Mahammend's cell because smoke was emanating from it. ECF No. 52-2 at 6, 7, and 8; ECF No. 52- 3 at 26, 27, and 28. Once the officers opened the cell door, Mahammend "charged" at them aggressively with clenched fists, resisted the officers as they tried to subdue him, and even tried to bite one of them. *Id.* After the officers cuffed Mahammend, the officers maintain that Mahammend was conscious and walked on his own to the medical unit. *Id*. ECF No. 53 at 120.

Once at the medical unit, and according to Nurse Amber Knoll, Mahammend was screaming and spitting; he also tried to bite the officer who was securing him on the stretcher. ECF No. 53 at 120. Knoll also reports that Mahammend bit a hole in the mattress at the medical unit, and that officers had to affix a "spit shield" to Mahammend so staff could examine him safely. *Id*. Eventually, Mahammend calmed down and allowed Knoll to examine him. *Id. See also* ECF No. 52 at 120.[4] At that time, Mahammend complained of injuries from the handcuffs. ECF No. 53 at 120. , Mahammend also reported that the officers' "attack" of him had been unprovoked. *Id.*

According to Nurse Knoll's medical notes, she did not observe any trauma to Mahammend's scalp or head; nor did she see "visual marks or open areas on skin." *Id.* But she did observe superficial abrasions on both wrists without active bleeding. *Id.* Photographs of Mahammend's injuries, however, show a large abrasion on his shoulder, swelling in his hands, and cuts on his wrists. ECF No. 52-2 at 19.

---

[4] Although Defendants submit video surveillance footage from the medical unit which they say shows a combative Mahammend, ECF No. 52-7 (Exhibit 6 filed separately, Video from Medical Unit, at 11:42:45 – 11:42:32), nothing suggests that Defendants afforded Mahammend an opportunity to review the footage before he had to respond to their motion. Accordingly, the Court cannot and does not rely on that evidence. The footage also does not support Defendants' contention. Instead, it shows corrections officers carrying Mahammend, placing him face down on the stretcher, and then cuffing and shackling him. Only after Mahammend is secured face-down does he move. The video footage also does not capture the entirety of Mahammend's time in the medical unit as he was moved to a location outside the view of the surveillance camera.

After the altercation, Officer Wills filed a Notice of Inmate Rule Violation ("NOIRV") which Mahammend contends is baseless and false. ECF No. 1. In the NOIRV, Wills reiterates that Mahammend appeared intoxicated in his cell and that he became violent when the officers tried to escort him to the medical unit for evaluation. ECF No. 52-5 at 2. From this, the prison charged Mahammend with four rule violations, including Rule 101 ("Commit assault or battery on staff"). *Id.* Mahammend received a hearing on January 28, 2025, before the Inmate Hearing Office. ECF No. 52-5 at 6.[5] At the hearing, the institutional representative advised that the prison would not pursue the intoxication infraction, and ultimately, the hearing officer found that Mahammend committed an assault on the officers by spitting on them. ECF No. 52-5 at 8-9.

## II. Analysis

### A. Exhaustion of Administrative Remedies

Defendants first argue that because Mahammend failed to exhaust administrative remedies prior to filing suit, the Complaint must be dismissed. The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e is not jurisdictional, a plaintiff must nonetheless exhaust before the court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). *See also Ross v. Blake*, 578 U.S. 632, 639 (2016).

Exhaustion requires an inmate to complete "the administrative review process in

[5] Once again, Defendants submit an audio recording of the hearing, but nothing suggests that they gave Mahammend an opportunity to review the audio in advance of his response. The Court, therefore, will not consider it.

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross v.* 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *see also Kaba*, 458 F.3d at 684.

DPSCS implements a well-defined administrative grievance process for inmates. *See generally* Md. Code Ann. (2023 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201, *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). An inmate first must file an ARP with the prison Warden, and if the ARP is denied, the inmate must next appeal the denial to the Commissioner of Correction. If the Commissioner of Correction finds against the inmate, the inmate next must file a grievance with the Incarcerated Individual Grievance Office ("IIGO"). C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

The prison dismissed Mahammend's ARP pending the outcome of the IID investigation. ECF No. 52-8 at 21. Accordingly, in light of this dismissal, the Court concludes that the ARP process was not available to Mahammend. *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023). *See also* COMAR 12.02.28.11(B)(h) (automatically dismissing ARP while IID investigation pending). *Id.* Administrative exhaustion requirements in this circumstance amount to "nothing

but 'dead end[s]' that are 'practically speaking, incapable of use.'" *Younger*, 79 F.4th at 380 (quoting *Ross*, 578 U.S. at 643-44). Accordingly, the Court will not dismiss for failure to exhaust administrative remedies.

**B. Motion to Dismiss or Alternatively for Summary Judgment**

Defendants next urge the Court to dismiss the claims on the merits pursuant to Rule 12(b)(6) or, alternatively to grant summary judgment in their favor under Rule 56. ECF Nos. 52, 52-2, 52-3, 52-4, 52-5, 52-6, 52-7, 52-8, and 53. Typically, the Court does not reach the merits of claims on summary judgment "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 448–49 (4th Cir. 2011). However, "where matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment" under Rule 12(d) where all parties "have a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Although Mahammend includes evidence for the Court's consideration, ECF Nos. 58, 59, 61 and 63, he also vigorously objects to the Court reaching summary judgment based on evidence which he has yet to receive, including video footage and related information that would otherwise be produced in discovery. ECF No. 57 at 2-3, 11, 13; *see also* ECF No. 61. Mahammend contends that the evidence will likely be favorable to him because it will show he had not been resisting the officers, and that Officer Wills placed him in a dangerous chokehold causing him to lose consciousness. ECF No. 57 at 13-14. Mahammend also proffers he can secure sworn declarations from several eye-witnesses to corroborate his version of events. *Id.* at 19. *See also* ECF No. 1 at 5; ECF No. 25 at 3.

Mahammend has convinced the Court he is entitled to full discovery in advance of resolution. *Farabee v. Gardella*, 131 F.4th 185, 193-95 (4th Cir. 2025). Defendants plainly did not share with Mahammend much of the record evidence they submitted to the Court, and without any justification for withholding the same. Nor does the Court accept Defendants' assurances that no other videographic evidence exists without at least providing Mahammend the opportunity to test such representations. ECF No. 52-7 at ¶ 3. Last, it would be inequitable to deprive Mahammend the opportunity to obtain evidence that contradicts the officers' accounts, and which arguably could support that their use of force had not been applied in good faith to restore order, but rather "for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Thus, the Court treats the motion as one to dismiss.

Turning to the excessive force claim, an Eighth Amendment challenge may proceed where some facts make plausible an officer had used force on an inmate "maliciously and sadistically to cause harm," rather than as a "good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To survive challenge, the Complaint must show that a prison official acted with a sufficiently culpable state of mind," and that the "deprivation suffered [by], or injury inflicted on, the inmate was sufficiently serious." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).

When viewing the Complaint allegations most favorably to Mahammend, the claim is plausible. Although the officers may have had legitimate reason to restrain an unruly Mahammend, officers plausibly exceeded the bounds of their authority by placing him in a chokehold and, while he was face-down and restrained, putting a knee on his back until he passed out. Likewise, Mahammend plausibly pleads that the use of force was unauthorized and excessive,

and thus was applied with the aim of injuring Mahammend, not to bring him under control. Thus, the motion to dismiss must be denied.

The Court will also appoint counsel to represent Mahammend. *See* 28 U.S.C. § 1915(e)(1). Mahammend is not trained in the law and is incarcerated, so proceeding to formal discovery presents an especially acute hardship on his ability to prosecute his claims. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist.* Ct., 490 U.S. 296, 298 (1989). When considering the difficulty in obtaining and reviewing relevant surveillance footage and securing witness affidavits, appointed counsel is amply justified. *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024).

Further, although the Eighth Amendment claim is pleaded sufficiently and discovery will proceed on that cause of action, the Complaint and its many "supplements" are simply too unwieldly to move forward on that pleading. Accordingly, the Court suspends all deadlines until appointed counsel can review the docket, meet with Mahammend and determine whether Mahammend will proceed solely on an Eighth Amendment excessive force claim. If so, the parties shall file a joint proposed scheduling order to include deadlines for filing an amended complaint, an answer to the amended pleading, and all necessary discovery and dispositive motions deadlines. Alternatively, should Mahammend add claims or defendants to the amended complaint, the parties shall submit a written status report with an appropriate briefing schedule in the event Defendants wish to move to dismiss any new claims pleaded in the proposed amended complaint.[6]

[6] The Court will not entertain a renewed motion to dismiss the Eighth Amendment excessive force claim against the involved corrections officers.

## III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, is DENIED without prejudice. A separate Order follows.

8/26/26
Date

/s/
Paula Xinis
United States District Judge